UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
JOHN AMES and WALTER PRYDATKO
as Trustees of the LOCAL 355 UNITED SERVICES
WORKERS JOINT APPRENTICESHIP and
TRAINING FUND,

                Plaintiffs,          06-CV-1533 (SJF) (MDG)

    -against-              **OPINION & ORDER**
                                                                      On Cross-Motions for
JILLIAN MECHANICAL CORP.,                Summary Judgment

                Defendant.
---------------------------------------------------------X

FEUERSTEIN, J.

I.    Introduction

    Plaintiffs John Ames and Walter Prydatko, as Trustees of Local 355 United Services Workers Joint Apprenticeship and Training Fund (the "Fund"), ("Plaintiffs"), commenced this action on April 4, 2006 under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 et seq. ("ERISA") seeking to audit the payroll books and records of the Defendant, Jillian Mechanical Corporation ("Jillian" or "Defendant"), and to determine monies due the Fund by Jillian. The Fund was established to provide apprenticeship programs pursuant to a collective bargaining agreement ("CBA") to which Jillian became a party.

    Jillian now moves for summary judgment dismissing the Plaintiffs' Complaint alleging that the programs run by the Fund are not approved by the New York State Department of Labor and that, therefore, it is not obligated under the CBA to pay the monies the Fund alleges are due. The Plaintiffs cross-move for summary judgment arguing that there is no such approval required.

1

For the reasons set forth below, the Plaintiffs' cross-motion is GRANTED and the Defendant's motion is DENIED.

II.   The Facts[1]

In 2002, non-parties Local 355, United Service Workers Union, IUJAT (the "Union") and the Long Island and New York Mechanical Contractors' Association (the "Association") entered into the first of a series of CBAs; this CBA commenced July 1, 2002 and ran through June 30, 2005. (See Pls.' 56.1 Stmt. at ¶ 4.) It contained, *inter alia*, provisions dealing with the establishment of an apprenticeship fund and training program. (See id. at ¶ 5.) Germane to the instant motions is Article 14 of the 2002 CBA, entitled "Apprentice Fund". In particular, Article

---

[1] Contrary to Local Civil Rule 56.1, the Defendant did not "annex[] to the notice of motion a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party [here, the Defendant] contends there is no genuine issue to be tried." This failure alone is a basis for denying the Defendant's motion. See id. ("Failure to submit such a statement may constitute grounds for denial of the motion."). In the absence of a Rule 56.1 Statement by the Defendant, Plaintiffs did not file "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party . . . as to which it is contended that there exists a genuine issue to be tried." Id. at ¶ (b).

Conversely, the Plaintiffs did file the required statement of material facts with its Cross-Motion for Summary Judgment. However, the Defendant did not file a response. Therefore, in accordance with paragraph (c) of Local Civil Rule 56.1:

> Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party *will be deemed to be admitted* for purposes of the motion *unless specifically controverted* by a correspondingly numbered paragraph in the statement required to be served by the opposing party.

(Emphasis added.) Thus, since Defendant Jillian has not specifically controverted any of the material facts set forth by the Plaintiffs in their "Statement of Material Facts as to Which No Genuine Issue Exists Pursuant to Local Rule 56.1" (hereinafter, "Plaintiffs' Rule 56.1 Statement" or "Pls.' 56.1 Stmt."), those facts are deemed to be admitted and the facts stated herein are taken from the Plaintiffs' Rule 56.1 Statement. (See attachment #11 to doc. #15.)

14(b) stated:

> b) The Employer contributions shall be used exclusively to provide programs through a plan qualified by the Internal Revenue Service in such form and amounts the Trustees of the Fund may determine, as well as for the organization and administration expenses of the Fund.

(Id.; see also Ex. A at 11, attached to Barry Aff.[2] (2002 CBA).)

The established Fund is a multi-employer, Taft-Hartley Employee Benefit Trust Fund governed by ERISA; it is a tax-exempt, welfare fund. (See Pls.' 56.1 Stmt. at ¶ 1; see also Ex. B, attached to Barry Aff. (Letter from IRS to Fund informing Fund of its § 501(c)(3) status).)

Neither the 2002 CBA nor the 2005 renewal CBA required that the Fund conduct any apprenticeship program approved by New York State or any other government entity. (Pls.' 56.1 Stmt. at ¶ 6.) Moreover, neither the Union nor the Association sought to negotiate a state approval requirement. (Id. at ¶ 7; see also Barry Aff. at ¶ 10; Schiavone Aff. at ¶ 11[3].)

In 2005, the Union and the Association renewed the CBA to cover the period from July 1, 2005 through June 30, 2008 ("2005 CBA"). (See id. at ¶ 10; see also Ex. D, attached to Barry Aff. (2005 CBA).) Articles 14 and 15 of the 2005 CBA, the provisions dealing with the Fund, are identical to Articles 14 and 15 contained in the 2002 CBA. (See id. at ¶ 12; see also Ex. D, attached to Barry Aff. (2005 CBA).) Thus, as in the 2002 CBA, there was "no requirement placed on the Fund as to the type of programs to be provided," such as programs being approved by New York State or other government entities. (Id. at ¶ 13.)

---

[2] The Barry Affidavit is Attachment #1 to the Plaintiffs' Cross-Motion for Summary Judgment (doc. #15).

[3] The Schiavone Affidavit is Attachment #6 to the Plaintiffs' Cross-Motion for Summary Judgment (doc. #15).

Also in 2005, Jillian employees were organized by the Union for purposes of collective bargaining. (See id. at ¶ 9.) Jillian agreed to recognize the Union as the majority representative of its employees and, thereafter, entered into an assumption agreement covering the terms and conditions of employment for its unionized employees. (See id.; see also Ex. C, attached to Barry Aff. (Assumption Agreement).) By entering into this assumption agreement, Jillian bound itself to the terms of the 2002 CBA and the subsequent 2005 CBA. (See id.)

According to the terms of the 2002 and 2005 CBAs, as an employer, Jillian must make contributions to the Fund on a monthly basis at rates specified in the CBAs and submit a list of the employees for whom contributions are being made. (See id. at ¶ 15.) Jillian has failed to make any required contributions since February 2005. (See id. at ¶ 17.) An audit of Jillian's books and records covering the period of February 2005 through June 23, 2006 found that Jillian owed $9,960.60 in contributions to the Fund for the that period. (See id. at ¶ 18.) According to Plaintiffs, a follow-up audit is necessary to determine the amounts due from June 24, 2006 to the present and Jillian also owes the Fund: (a) interest at the legal rate; (b) liquidated damages in the amount of 20% of the contributions due; and (c) reasonable attorneys' fees and costs, and costs of collection. (See id. at ¶¶ 19, 26; see also Ex. F, attached to Barry Aff. ("Local 355, United Service Workers, Transportation Communications International Union, AFL-CIO, Joint Apprenticeship and Training Trust Fund Agreement").)

III. Analysis

   A. Summary Judgment Standard of Review

Summary judgment should not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material "if it might affect the outcome of the suit under the governing law." Holtz v. Rockefeller & Co., 258 F.3d 62, 69 (2d Cir. 2001). An issue of fact is genuine only if a jury could reasonably find in favor of the nonmoving party based on that fact. See id. The moving party bears the initial burden of establishing the absence of any genuine issue of material fact, after which the burden shifts to the nonmoving party to establish the existence of a factual question that must be resolved at trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). The trial court is required to construe the evidence in the light most favorable to the nonmoving party, and draw all reasonable inferences in its favor. See id. at 252; Cifarelli v. Vill. of Babylon, 93 F.3d 47, 51 (2d Cir. 1996).

   B. The Instant Case

This case revolves around paragraph (b) of Article 14 of the CBAs, namely, the "Apprenticeship Fund". As previously stated, paragraph (b) reads:

> b) The Employer contributions shall be used exclusively to provide programs through a plan qualified by the Internal Revenue Service in such form and amounts the Trustees of the Fund may determine, as well as for the organization and administration expenses of the Fund.

(Ex. A. at 11, attached to Barry Aff. (2002 CBA); see also Ex. D. at 11, attached to Barry Aff.

(2005 CBA).) When presented with a CBA, a court is to apply traditional rules of contract interpretation; i.e., apply the plain meaning to unambiguous language. See, e.g., Mastro Plastics Corp. v. NLRB, 350 U.S. 270, 279 (1956) ("Like other contracts, [a CBA] must be read as a whole and in the light of the law relating to it when made."); Aeronautical Indus. Dist. Lodge 91 v. United Techs. Corp., 230 F.3d 569, 576 (2d Cir. 2000) ("When courts interpret CBAs, traditional rules of contract interpretation apply as long as they are consistent with federal labor practices."); Bozetarnik v. Mahland, 195 F.3d 77, 82 (2d Cir. 1999) ("In interpreting a [CBA], we read the contract as a whole, and we construe individual phrases in their context, not in isolation."); Siskind v. Sperry Ret. Program, Unisys, 47 F.3d 498, 506 (2d Cir. 1995) ("ERISA requires strict attention to the actual language of the plan's governing documents.").

Defendant Jillian seeks to avoid its contribution obligations on the grounds that the apprenticeship programs run by the Fund are not "qualified programs" because they are not registered with the New York State Department of Labor, and that the CBAs require the Fund's programs to be so registered. These arguments[4] fail.

Parsing the plain language of the salient provision of the CBAs, i.e., Article 14(b), the Court finds that the qualification requirement applies only to the "plan"–here, the Fund. That is, the Fund must be qualified by the Internal Revenue Service ("IRS"). (See Ex. A, attached to Barry Aff. (2002 CBA at Art. 14(b) (emphasis added)); Ex. D, attached to Barry Aff. (2005 CBA

---

[4]The Court notes that the Defendant did not support its Motion for Summary Judgment with the required memorandum of law. Local Civil Rule 7.1 instructs that "[w]illful failure to comply with this rule may be deemed sufficient cause for the denial of a motion or for the granting of a motion by default." In its discretion, the Court has gleaned Jillian's arguments from Attorney Gutman's "Affirmation in Support of Defendant's Motion to Dismiss Complaint Pursuant to Rule 56(b)" (attachment #1 to doc. #14) and his "Reply Affirmation" (doc. #16).

at Art. 14(b)).) The uncontroverted evidence in the record shows that the Fund *is* qualified by the IRS as a § 501(c)(3) entity. (See Ex. B, attached to Barry Aff (Letter from IRS to Fund advising Fund of its § 501(c)(3) status).) Hence, Defendant's "qualification" argument is without merit.

Moreover, the programs to be provided are to be "*in such form* and amounts *the Trustees of the Fund may determine. . .*" (See Ex. A, attached to Barry Aff. (2002 CBA at Art. 14(b) (emphasis added)); Ex. D, attached to Barry Aff. (2005 CBA at Art. 14(b)).) There is no requirement that the programs offered by the Fund be approved, qualified or registered by or with any governmental entity. While Jillian is correct that "New York State Department of Labor has been recognized as a 'SAC' [i.e., a State Apprenticeship Agency or Council] in New York State to review, approve and register apprenticeship programs since 1978 and is the only existing entity in New York that can approve such apprenticeship training programs," (Gutman Aff., attached to Notice of Mot. Summ. J. (doc. #14)), there is no requirement that the Fund's programs be so approved. While there are state statutes and regulations in New York governing apprenticeship training programs, "New York does not require that [apprenticeship training programs] be registered in order to operate." Joint Apprent. & Training Council, Local 363 v. N.Y.S. Dep't of Labor, 984 F.2d 589, 591 (2d Cir. 1993). Thus, while Defendant's discussion of the legislative history, registration, approval and regulation of apprenticeship programs is informative, (see Gutman Reply Aff. at 3-8), it misses the mark. Moreover, in light of Second Circuit case law, Jillian's assertion that for the Fund to be able to "collect dues[,] it must obtain a registration and approval from the New York State Industrial Commissioner," (id. at ¶ 4), is incorrect. Therefore, Jillian's argument regarding required registration of the Fund's apprenticeship training programs is unsustainable.

7

The evidence supports Plaintiffs' claims for contributions from Jillian and Defendant Jillian has not presented any argument or evidence to support its refusal to make the required CBA apprenticeship training program contributions to the Plaintiffs. Therefore, finding no material facts in dispute, and finding that the Plaintiffs are entitled to judgment as a matter of law, it is proper to grant summary judgment in the Plaintiffs' favor.

IV. Conclusion

For the foregoing reasons, the Defendant's Motion for Summary Judgment is DENIED and the Plaintiffs' Cross-Motion for Summary Judgment is GRANTED. The case is referred to the Magistrate Judge to direct a follow-up audit and to determine the final judgment award.

**IT IS SO ORDERED.**

SANDRA J. FEUERSTEIN
United States District Judge

Dated: March 26, 2008
Central Islip, NY